JOHN E. GROVES v. V. V. BYRNES.[1]

August 15, 1930.

No. 27,893.

[1]Reported in 231 N. W. 926.

*John H. Horeish,* for appellant.
*Stanley S. Gillam,* for respondent.

WILSON, C. J.

Plaintiff appealed from an order denying his motion for a new trial.

Desirous of advertising fountain pencils, defendant ran an advertisement wherein prizes were offered to those who excelled in a word puzzle contest. It stated a movie prologue, and the contestants were to send in a list of tangible objects found therein. The advertisement included this:

"2. Will award 100 more points to whoever sends in the largest, nearest correct list of names of tangible objects found in the movie prologue above, formed of letters following each other in consecutive order. * * *

"3. Names of objects can be made up from letters that appear consecutively in any word or words or sentences. Any letters appearing consecutively may be used in names of more than one object. Name of any object may be used as often as it appears. Your list of objects must be in the order they appear in the prologue."

The judges awarded to Mary L. Williams the first prize of $1,000, which she has received. Plaintiff claims he was entitled thereto. The issue is whether plaintiff's list is superior to the Williams list. The aim was to have "the largest, nearest correct list of names."

Plaintiff's list included the 884 letters of the alphabet found in the prologue as names of tangible objects. These were rejected.

If single-letter words are to be counted, plaintiff may have had the nearest correct list. He accompanied his list with metal printer's type letters and with letters cut out of pasteboard. This was apparently to urge their acceptance as tangible objects. These were rejected.

We are of the opinion that the trial court did not err when he ruled that the advertisement contemplated words made up of more than a single letter. Such was the understanding of the judges awarding the prizes. It was the understanding of all but about six of the 20,000 contestants.

■ Plaintiff assigns as error the method used to determine which list was "the largest, nearest correct list of names." The court termed competent words "plus words"; it termed incompetent words "minus words." It also termed misplaced competent words "minus words." The inquiry is narrow. It relates only to the lists of the two parties to the action. Which is the "largest, nearest correct list?" The inquiry is not limited to a determination of which has the largest number of correct competent or "plus words." Errors tend to discredit the list. It would not be fair to permit a contestant indifferently to guess many words and have no penalty for rejection. The court directed that from the list of each contestant a list be made of the "plus words" and another list be made of the "minus words" and that the latter be subtracted from the former. This computation gives the Williams list plus 624 and the plaintiff's list minus five. The one had 62 errors, the other 1,034.

Plaintiff styles this a double deduction. Possibly it is. But our problem is to find which list is the "nearest correct." The trial court illustrates:

"Suppose that two lists are identical with respect to plus words; that one has no minus words and that the other has a large number. Can there be any doubt that the former, while not the largest, is the 'nearest correct' and should be the winner? It is equally clear to me that if one list has, say, 100 plus words and no minus words, and another has 101 plus words and 2 minus words, the former is the 'nearest correct.' "

The "double deduction" may be more mythical than real. The "minus words" are not acceptable as words. Being mere errors they must be charged against the "plus words" to see which is "nearest correct." There is only one "plus word" eliminated by the unsuccessful attempt. Call it a penalty, black mark or demerit, the fact remains that the "minus words" detract from the correctness of the "plus words." There seems to be no measure to use but a word for a word. The method treated the two lists alike. Plaintiff wishes a so-called single deduction which would result merely in the elimination of the "minus words" just as if they never existed. That would not do. The solution of such puzzle so as to win a prize involves considerable mental and intellectual achievement. It is as important to know what not to list as to know what to list. Every effort should involve some risk. It would be a strange spelling match if the failure to spell a word correctly would not count. Plaintiff's theory would be like a golfer counting only his successful strokes. To do otherwise would be unfair not only to other contestants but to the judges of the contest. The method used was fair and just.

Before plaintiff submitted his list he wrote a letter to the defendant asking whether single letters were going to be called objects. This inquiry in the letter was not answered. In the same letter however the plaintiff also made this inquiry:

"If a contestant submits a word ruled out by you, what effect would it have upon his standing? Would he be credited with just one less object or two less?"

To this inquiry defendant replied:

"If a contestant submits a word ruled out by the judges, he is marked out one for that word."

Thereafter plaintiff again wrote defendant calling attention to the fact that his above unanswered inquiry had not been answered, to which defendant did not reply. The advertisement did not invite correspondence. The record does not show that defendant knew the rules under which the judges would act. Plaintiff sought informa-

tion that other contestants would not have. Defendant was under no duty to answer his letters. Good faith did not demand an answer. Hence defendant's silence does not constitute estoppel. To base an estoppel on silence there must be a duty to speak. Macomber v. Kinney, 114 Minn. 146, 128 N. W. 1001, 130 N. W. 851. In so far as defendant did answer plaintiff's letter, it was intended only to be informative and not contractual. Vernon Center State Bank v. Mangelsen, 166 Minn. 472, 208 N. W. 186, 48 A. L. R. 710. Nor does the record show that plaintiff relied thereon to his prejudice. This is essential. LePak v. Hedberg, 170 Minn. 495, 213 N. W. 40.

Affirmed.

[1]Reported in 231 N. W. 921.