Elsie HILDEN, a Personal Representative of the Estate of Alfred A. Hilden, deceased, and Jayme Scott Lynne, Plaintiffs/Appellants,

v.

IOWA NATIONAL MUTUAL INSURANCE COMPANY, and Boyd Services, Inc., a/k/a Stone's Insurance Agency, and Ronald Stone, individually and as agent of all, Defendants/Respondents.

No. C5-83-1143.

Supreme Court of Minnesota.

April 5, 1985.

Stephen Torvik, Montevideo, Allan Swen Anderson, Granite Falls, for plaintiffs/appellants.

C. Allen Dosland and Robert J. Murphy, New Ulm, for defendants/respondents.

Stephen S. Eckman, Minneapolis, W.E. Jepsen, Stillwater, for Minnesota Trial Lawyers Assn. .

COYNE, Justice.

Plaintiffs appeal from a summary judgment declaring that bodily injury residual liability coverage afforded under a single policy insuring three described automobiles may not be stacked. We affirm.

The defendant, Iowa National Mutual Insurance Company, issued a family automobile policy to Alfred and Elsie Hilden, as named insureds, affording insurance coverage on three described automobiles. The policy limits with respect to liability for bodily injury arising out of the ownership, maintenance or use of a covered automobile are $100,000 for each person and $300,-

000 for each occurrence. The premiums for the residual liability coverage and for the various other coverages afforded by the policy are stated separately for each automobile.

On November 5, 1979, while Jayme Scott Lynne, the Hildens' grandson, was driving one of the described automobiles, the vehicle left the road. Kevin Kvistad, a passenger, was severely injured in the accident. Kvistad sued Lynne and Alfred Hilden. Hilden demanded that Iowa National cumulate the bodily injury liability coverages afforded with respect to the three automobiles described in the policy to provide liability insurance to a limit of $300,000, the amount for which Kvistad had offered to settle his action. Iowa National rejected Hilden's demand, contending that the limit of its liability for the damages sustained by Kvistad was $100,000. Kvistad secured judgment against Lynne and Hilden in the amount of $350,000. Iowa National paid $100,000 in partial satisfaction of the judgment, and payment by Hilden was accepted in satisfaction of the balance of the judgment. Hilden and Lynne then instituted this action for a declaratory judgment that Iowa National was liable for the cumulative limits of the residual liability insurance coverage afforded with respect to the three automobiles described in its policy. This appeal is from summary judgment entered in favor of Iowa National.[1]

The declarations page of the Iowa National policy provides, "The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto." Liability coverages and limits of liability are set out in this fashion:

BODILY INJURY LIABILITY
(in thousands)

| Car | Each Person | Each Occurrence |
|---|---|---|
| 1 | $100 | $300 |
| 2 | $100 | $300 |
| 3 | $100 | $300 |

On the declarations page, Car 1 is described as a 1978 Mercury 2-door; Car 2 is a 1978 Ford Ranchero; and Car 3 (the vehicle involved in the accident of November 5, 1979) is a 1979 Ford sedan.

The part of the policy applicable to residual liability insurance coverage contains this provision regarding the limits of liability:

**Limits of Liability:** The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person as a result of any one occurrence, the limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of the company's liability for all such damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence.

The following provision appears in the policy conditions:

**4. Two or More Automobiles—Parts I, II, and III:** When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, but an automobile and a trailer attached thereto shall be held to be one automobile as respects limits of liability under Part I of this policy, and separate automobiles under Part III of this policy, including any deductible provisions applicable thereto.

---

1. Boyd Services, Inc., a/k/a Stone's Insurance Agency, and Ronald Stone were also defendants in the declaratory action. Plaintiffs alleged that Stone had represented to Hilden that the liability insurance on the three automobiles would be combined to provide total limits of $300,000 for one person and $900,000 for any one accident. The claim against these defendants was tried and the jury determined that there had not been any misrepresentation. That verdict is not contested in this appeal.

■ The plaintiffs contend that the language in Condition 4, "the terms of this policy shall apply separately to each", is ambiguous and confusing and, hence, must be interpreted in favor of the insured. That provision, however, cannot be construed to afford contributing coverage. Condition 4 simply assures the applicability of the policy to whichever of the insured automobiles is involved—or to as many of the insured automobiles as are involved—in an accident. If, for example, two of the Hilden automobiles, the 1979 Ford Ranchero and the 1978 Mercury, collided with each other, the Hildens would be insured to $100,000 against liability for bodily injury to one person arising out of the use of the Ford and also to $100,000 against liability to that person arising out of the use of the Mercury.

■ The coverages afforded by the Iowa National policy and for which premiums have been charged, the limits of such coverages, and the descriptions of the insured automobiles are set out with sufficient clarity to make them readily ascertainable. The policy provision with respect to the limits of liability is straightforward, and we find no ambiguity in either that provision or Condition 4. There was one person injured—Kvistad; there was one automobile involved—the 1979 Ford sedan described in the policy; and there was one occurrence—the accident of November 5, 1979. Under the terms of the policy, the limit of the bodily injury liability coverage afforded with respect to Kvistad's damages is $100,000. *See Rosar v. General Insurance Co. of America*, 41 Wis.2d 95, 163 N.W.2d 129 (1968); *Pacific Indemnity Co. v. Thompson*, 56 Wash.2d 715, 355 P.2d 12 (1960).

The plaintiffs assert, however, that policy provisions which preclude pyramiding residual liability coverages should be declared void as against public policy. Conceding that nothing in the Minnesota No-Fault Automobile Insurance Act expressly addresses the issue, the plaintiffs contend that the stated purpose of the No-Fault Act mandates application of the rationale on which *Van Tassel v. Horace Mann Insurance Co.*, 296 Minn. 181, 207 N.W.2d 348 (1973), and the subsequent cases dealing with various forms of first party insurance coverage are based.

The stated purpose of the No-Fault Act to which the plaintiffs refer is not simply "[t]o relieve the severe economic distress of uncompensated victims of automobile accidents within this state", but to achieve that end "by requiring automobile insurers to offer and automobile owners to maintain automobile insurance policies or other pledges of indemnity which will provide prompt payment of specified basic economic loss benefits to victims of automobile accidents without regard to whose fault caused the accident." Minn.Stat. § 65B.42(1) (1984).

■ It is sometimes commented that basic economic loss benefits and other first party coverages such as uninsured and underinsured motorist coverages protect and follow the person, not the vehicle. *E.g., Wasche v. Milbank Mutual Insurance Company*, 268 N.W.2d 913, 918 (Minn.1978). The risk being insured by each policy issued to an insured party is principally the risk of injury to himself or covered members of his household. *Yeager v. Auto-Owners Insurance Company*, 335 N.W.2d 733, 737 (Minn.1983); *Koons v. National Family Insurance Company*, 301 N.W.2d 550 (Minn.1981). Ordinarily, an injured person looks to his own policies or those covering him as an insured for basic economic loss benefits and the benefits of other first party coverages whether or not the policies are associated with the particular vehicle involved in the accident. *E.g.,* Minn.Stat. § 65B.47, subd. 4 (1984). Thus, the risk does not increase with the number of vehicles owned or policies issued. *Yeager v. Auto-Owners Insurance Company*, 335 N.W.2d 733, 737 (Minn. 1983); *Koons*, 301 N.W.2d at 553.

■ It is the absence of increase in the risk which distinguishes first party coverages from third party coverages and renders inapplicable to liability coverages the two-fold rationale behind stacking: the Legislature requires certain coverages in all policies and, a premium having been

paid for each coverage, the insurer is not to have a windfall in premiums paid for coverage not honored. *Yeager,* 335 N.W.2d at 737; *Van Tassel,* 296 Minn. at 187, 207 N.W.2d at 351–52. While it is true that the legislature now requires the inclusion of residual liability coverage in all policies and, indeed, requires that every motor vehicle be insured, the Minnesota No-Fault Act leaves unaltered the basic framework of the law of liability insurance, and the declination to cumulate the limits of liability applicable to various automobiles does not result in the insurer reaping a windfall in premiums paid for coverage not honored. *Toomey v. Krone,* 306 N.W.2d 549, 550 (Minn.1981). Under the terms of the policy the premium is calculated and paid for insurance against liability arising out of the ownership, maintenance or use of a particular automobile. The insurance against liability arising out of the ownership, maintenance or use of that automobile is not applicable to liability arising out of the ownership, maintenance or use of some other automobile, whether or not the second automobile is insured under the same policy. The premium paid for insuring one or more additional automobiles under the policy merely reflects the increased risk attendant on the ownership, maintenance and use of each additional automobile. Hence, the insurer has neither received a windfall in premiums paid nor dishonored its obligations under the policy when it declines to stack the liability coverage applicable to one described automobile atop the liability coverage applicable to another automobile. We have previously observed in dicta that liability coverage follows the vehicle and not the person and that there can be no stacking of liability coverage. *North River Insurance Company v. Dairyland Insurance Company,* 346 N.W.2d 109, 115 (Minn.1984). We now hold that the limits of residual liability insurance coverage applicable to each person and each occurrence applies separately to each automobile described in Iowa National's policy and that the liability coverage applicable to the 1978 Mercury and the 1978 Ford Ranchero may not be stacked on that applicable to the 1979 Ford sedan which was involved in the accident in which Kevin Kvistad was injured.

Affirmed.